And we'll now move to the next argument on the calendar. That's Sessoms v. United States. Mr. Schmidt. Good morning. Good morning, Your Honor. I am Sam Schmidt. I represent Appellant James Sessoms. Okay, wait, I haven't started you yet. And Mr. Siegel. Good morning, Your Honor. Okay, and I hope you can both see and hear. It seems like you can.  but you've reserved three minutes for rebuttal. Thank you, Your Honor. We'll hear from you. It is clear that all defendants have a right in a criminal prosecution to be represented by competent counsel at all stages of the criminal proceeding. And when we talk about all stages of the criminal proceeding, as Strickland indicated, this includes the right to be consulted, to have the attorney advocate for him and inform him of what is going on in the case. And that the courts must look at the totality of the circumstances to see if the attorney exercised the skills and diligence that he should have as a competent attorney. And then it must be found that there's a reasonable probability that but for the errors, the result would be different. In this case, Your Honor, had original counsel acted competently, the result, there's a reasonable probability that the result would have been different and that there would not have been a trial on a racketeering conspiracy case where there were the admission of basically a confession, co-conspirators who testified, there were very strong case by the government presented where the defendant faced at that time a 40 or 42 year mandatory minimum sentence. Now, if one looks at the totality of the circumstances, there's one area that I believe is the clearest and I don't mean to ignore the other issues, but on August 2nd, the government indicated that they were going to supersede the indictment with include another 924C count. And as Your Honor, and we all understand that that means that defendant would face not only five or seven years or 10 years for the first count that he would face an additional 25 years consecutive mandatory minimum for the second one. Now, the prior counsel was on trial, completed trial on August 8th, and therefore no one can expect him to have taken any steps prior to August 8th. However, what is very clear is that he did not confer with his client prior to the date that the government indicated that he would consider that it's going to supersede the indictment. And while there is a quote, factual dispute unquote, as to whether Mr. Cooper, the prior counsel visited his client to explain to him what happened. And Mr. Sessom's case has demonstrated that there was other evidence, not just his own testimony that indicated that prior counsel did not visit him. But even if his testimonies accepted prior counsel, that he did not visit him until August 25th or August 28th. Now, I know that Your Honor, I've been before Your Honor in the district court, I've been before Judge Lynch in the district court, we're all aware of the ramifications of that second 924C count and how your trials result in it when people have the opportunity to plead guilty to offenses that do not include that additional 25 year mandatory minimum. I think I get that. So if this had been communicated, you're saying it wasn't, if it had been, then what? I mean, your client would have accepted a plea offer that wasn't on the table it sounds like. What would have happened if it was communicated and if everything else was communicated, the explanation that his so-called defenses to the crimes were indeed not defenses because it was a racketeering conspiracy, if he was given discovery, if the discovery was discussed with him, if- But what would have happened? So the government then would have backed off its 924C, its procedure with the second 924C? What would have happened is that with explanation to Mr. Sessoms, he would have understood that, oh, I don't want to go to trial and face this 40 to 42 year mandatory minimum that I'm likely to get, that Mr. Cooper, as the declaration of Mr. Leavitt indicated and the government has conceded, that the attorney then goes to the prosecutor and says, is there any way to avoid the second 924C? You offered this 15 or 17 year mandatory minimum count before can we get that, right? Is there anything in the record to suggest that the government would have been amenable to that kind of a conversation? Oh, of course, of course it was. Because even during trial, it offered a global plea. So therefore- Excuse me, Mr. Schmidt, the global plea is very different. I thought you had focused in your papers, not on the period after August 2nd or August 8th, but on the earlier period in the spring. Because as I understand it, and you can correct me if I'm wrong, because the record is very confused here. And I think many of the things that Judge Block found are flatly wrong. But my understanding was, even from your presentation, that after a certain date, the case was going to trial. The government's only offer was a global plea that fell through, not because of Mr. Sessoms, but because of the co-defendant. And we were kind of stuck there. I thought the issue was, back in the spring, there was a better offer on the table. I believe that you were counsel at the hearing, right? And you were asking questions, or at least whoever was counsel was asking questions of Mr. Cooper, which the court did not allow to be answered as to whether Mr. Cooper was aware, even before the government superseded or said it was going to supersede. That it was very likely that they would, that that's the way things work here, is if you don't take the plea offer, there's going to be a superseding with more. And Cooper wasn't allowed to answer whether that was his understanding. But it seemed to me that that was your focus in the papers. And I'm missing, I thought you were saying, well, the real problem was he had a pretty decent offer, given the very serious crimes with which he was charged, on the table from the government in the spring. And it was never really explained to him that there was such an offer, why he should take it, what might happen to him if he didn't take it, and so forth. But now you seem to be focusing solely on a period that's really like the last month before trial, isn't it? Yes, and I don't mean to, as I said, I didn't mean to ignore that part. And to some extent, both of them work together. They work together in the sense that there was no real discussion between Mr. Sessoms and Mr. Cooper as to plea negotiation, what it meant, what the evidence was against him. And yes, so yes, you can go back to that. That was, there was some kind of, quote, factual dispute because Mr. Cooper said that he told Mr. Sessoms about it. And even though we had much evidence to show that that is not likely. The reason I focused on the later one is the important question of what needs to be decided. What needs to be decided is that there's a reasonable probability that the result would have been different.  that had Mr. Sessoms' attorney on August 10th said to the government before there was a superseding indictment that, look, he doesn't wanna go to trial with the superseding indictment that gives him another 924C. Can he have that plea that was offered back in the spring where he'll plead guilty to either 15 or 17 mandatory minimum? That there's no reasonable view that that would not have been re-offered. And the reason why I say that- Because to say that it's a 15-year mandatory minimum is not really a plea offer, right? I mean, the plea offer, I mean, if it's a 15-year cap, that might be a plea offer. If it's a 15-year minimum, it seems to me the offer has to include more definition, doesn't it? In terms of what the maximum exposure is and what the guidelines would be. Oh, of course, of course. And that's part of the issue here is that- I'm sorry, can you just articulate for me in the spring, in April, what was the plea offer that you are saying was made by the government? Well, admitted into evidence at the hearing was a draft plea offer that had the counts that he would plead guilty to, the estimated guidelines for those counts, and of course, the mandatory, the maximum sentences for the crimes that he'd be pleading guilty to. But none of that information was given to Mr. Sessoms during the beginning, the middle, or the end of the case. So- And Mr. Schmidt, what you're saying is the maximums here were always life, right? Of course. Under any circumstance, but the big difference is that the plea offer that was maybe made in the spring, I think that's disputed, but the plea offer that's in that draft has a 17-year mandatory minimum, while the sentence that he faced after trial had a, I forget if it's 35 or 45 year, that mandatory minimum. And of course, it's a much better deal for someone to be able to argue to a court you should give a sentence that is less than 35 years than when the judge has no discretion to go below 35 or 45. Isn't that why this is a deal that a reasonable person would have taken? And there's a reasonable probability, if it was offered and if he was properly advised, there's a reasonable probability he would have taken it. Absolutely, and if it was explained to him in a manner so he fully understood what he was facing. And as I indicated, the plea, the mandatory minimum was either 40 or 42 at the time. It's been lowered because of the change of the law, and ultimately when he was sentenced, it was 35. But as you can see, also Judge Trager sentenced many people who took pleas below the sentencing guidelines. The brief indicates, one of the people who was facing approximately 20 years received a 10 year sentence after a plea. So yes, all of those things were important. And- Mr. Schmidt, I have a different type of question because there's a lot that you're saying that I might tend to agree with, but the problem as I see it is there are a lot of factual disputes here. And it's not clear to me that the record clearly establishes some particular set of facts or at least a set of facts that you would like there to be. What there is though is a district judge who made certain findings that seemed to me to be flatly wrong. So the judge says that both Mr. Cooper and the AUSA credibly attest that the government never proposed more than a global plea, which Sessoms rejected due to his unwillingness to cooperate against the co-defendants as the first and only offer expressly required. And it seems to me that absolutely everything in that sentence is wrong. That even that Cooper never testified to that. A 15-year offer back in the spring. The government was all over the lot about whether this earlier plea was offered or not. The global disposition was not a 25-year mandatory minimum and it did not require cooperation and neither did the draft agreement in the spring. All of this is just wrong. So what I'm concerned about and I'd like your view on is suppose I think that the district court made clearly erroneous findings, but I can't say that they're clearly erroneous because the exact opposite is true. That is to say that there was an offer in the spring. It was not conveyed, et cetera, et cetera. There are disputes about these things. I know that what the district judge said was wrong. I don't know what is right. What do we do? We send it back to judge Block and say, make better findings? Well, that's one thing that can be done, but I think that your honor has misstated some of the things. The government made it very clear. They were not all over the place, but they made it very clear, even in the rule 33 motion that was made, that an offer was made in the spring. There is no question about it. And I think that it's very reasonable to assume that when you have a draft agreement that dated in April with the guidelines and what you're pleading guilty to, et cetera, that that confirms that that was the elements of the offer. So I think that there really isn't any dispute of what the offer was. There is a little bit of a dispute whether or not it was sufficiently set forth or enough details. But I think it's pretty clear because we all know what all the details of a Southern district plea agreement has. And the only thing that really varies are the actual crimes you're pleading to and the guidelines. And so I think that's a non-issue, right? And so the issue then goes back to how did Mr. Cooper deal with this offer? With Mr. Sessoms. And the fact of Mr. Cooper not being straightforward in representations to both the district court during the case as to why he didn't file a motion to suppress his statements, why he didn't file any objections or meet with his client about the pre-sentence agreement or anybody did to this court in his disciplinary case he did not honestly admit to why he did not represent his clients properly. That we have a situation where so much of it shows that Mr. Cooper did not do what it was necessary to adequately represent his client, including taking steps when there's going to be a superseding indictment where from my experience and I believe even your honor's experience that had the attorney gone to the prosecutor who said that, okay, in two or three weeks we're gonna have a superseding indictment with the second 924C, but my client will take that original offer like they offered the other co-defendants who took pleas in August or September, that would have been an offer. Now we're moving back into August. So we wanna hear from the government with respect to offers made. But I just, one question. I mean, so Mr. Cooper's affidavit says this, the potential plea number, which I recall to be 15 years while never formalized was directly communicated to Mr. Sessoms by me. Mr. Sessoms was not happy with the potential offer and refused it because it was too much time. Judge Block made no finding about the credibility of that. But so if we send it back and Judge Block says, okay, I credit Cooper on that, that Mr. Sessoms turned down a 15 year mandatory minimum because it was too much time. Is there anything left then to this appeal? Yes, there is. It is that it's not simply conveying an offer that was made. It's basically advising and consulting and talking to your client about, you don't even have to make a specific recommendation whether to take it, but it's required that the client understand what he's facing, what kind of case it is, what the evidence, if what he thinks is a defense is not a defense to the crime. So what the judge is likely to give him a sentence. So there's a whole amount of information that is required to be passed on to the client so he can make a decision whether or not to take a plea. So I think he didn't tell him, but I think even if the judge finds that, there are still elements that show that he was ineffective. Okay, all right, we've gone way over. You've got three minutes of rebuttal, which we'll see if you'll need. Thank you, Your Honor. We'll hear from Mr. Siegel now for 10 minutes. Thank you, Your Honor. May it please the court. My name is Jonathan Siegel and I represent the United States. Your Honor, I understand Judge Lynch's point about some of the findings in Judge Block's decision, but I think that that really doesn't matter here because even if you look at the facts that really aren't disputed, and if you just look at the law, Mr. Sessom's claim fails. So even looking at that February-March claim that Judge Lynch was asking about, I don't think it's disputed that there was a phone conversation between the lead AUSA and Mr. Cooper where they discussed the potential mandatory minimum. I think it's also not disputed that there was no discussion of the guidelines on that phone conversation. The only place where there's a discussion of the guidelines is in the draft plea agreement that Mr. Schmidt was talking about. But I submit that that's really a red herring because it's also not disputed and Mr. Schmidt conceded it before the district court. That draft was a draft that was never circulated. There is no evidence in the record and all indication in the record shows that it was never sent to Mr. Cooper. And in fact, that most of that draft does not even apply to Mr. Sessoms. If you look at the guidelines calculation in that draft, by all indications, that's not a guidelines calculation for Mr. Sessoms, that's a guidelines calculation for another defendant that was being used as a template. And the government pointed out that, you know, if you look at the first page of that draft, it talks about him pleading to a robbery charge. There's no calculation for a robbery charge in the guidelines of that draft. The first page talks about a 924C charge. There's no consideration of the 924C charge in the guidelines calculation. In the section of the draft plea agreement that talks about what charges would be dropped or what charges there would be coverage for, there's no alignment between that and the charges that Mr. Sessoms had actually been charged with. So what I think that that draft tells us, if it tells us anything, is that whatever offer there was, it hadn't even gotten to the point of writing up a full draft. It hadn't gotten to the point of- Mr. Siegel, just to add to that, doesn't it say that he's in criminal history category four, and that's also not applicable to this particular defendant? Your Honor, I think when the court calculated his criminal history at sentencing, there was a dispute about his criminal history. I don't know whether the government's position at that time would have been whether he was in criminal history category four or not. I know the offense level is totally off, but I don't know about that criminal history category. So I think the question is, now that you have where the only offer is, maybe we can agree to a 15-year or 17-year mandatory minimum. Is that the kind of offer that triggers the obligations under Lafler and Frye? And several courts, including circuit courts, and many courts in the circuit have held that it does not. And the reason that it does not- Mr. Siegel, let me try to understand what you're saying. You're saying there's a phone conversation in which there is a discussion of whether the government would be willing to agree to a 15-year mandatory minimum. And for these purposes, whether it's 15 or 17 doesn't make much difference to me. There's a discussion of that between defense counsel and the government. And the government is at least sufficiently receptive to that possibility that the assistant drafts or starts the process of drafting a 15 or 17-year mandatory minimum plea, which obviously is much more advantageous to this defendant than what's gonna happen if he doesn't pursue plea negotiations. There's no finding as to whether Mr. Cooper, no finding by the district court as to whether Mr. Cooper ever conveyed that discussion or the possibility of a 15-year plea to his client. His client denies it. He says he did propose it and the client vetoed it. And in effect, that's why negotiations didn't proceed further. On that state of play where there is that ambiguity, can we say, well, we don't have to think anymore about this? If the lawyer never did talk with his client about his client's willingness to accept that kind of plea, never did explain why the lawyer thought that might be a good thing to do, that the lawyer, we can say the lawyer was effective because he had a discussion with the AUSA and then let it drop. So, Your Honor, I would answer that two ways. So, one, I think there are findings that could support that in the record, even with what Judge Block said, with what Judge Block said, much of which I agree is error. I think he does make a finding that would support it. But to answer your question on legal issues- Well, can you just point me to it? That'd be very helpful. If you could point me to the place where Judge Block finds that Mr. Cooper discussed with his client the possibility of a 15-year mandatory minimum plea and the client rejected it. Well, what I think it is, Your Honor, is if you read the transcript and if you read the opinion, it's clear even from the transcript, as soon as this early spring offer is discussed, what Mr. Cooper explains is, he saw it as sort of there were two options. The government was saying, this is your offer or you could cooperate or obviously you can go to trial. And those were an alternative. Even at the hearing, it's clear that Judge Block misunderstood that and thought that that original spring offer was a cooperation agreement or an offer to cooperate with that 15-year mandatory minimum. And he repeatedly followed up with Mr. Cooper as well. Did you talk to him about that cooperation? To which Mr. Cooper said, yes. And he repeatedly talked to Mr. Sessoms about that. In the sentence that Your Honor quoted, what the court is saying is Mr. Cooper credibly testified that he talked about this plea offer that required cooperation and that Mr. Sessoms rejected it. Now, the thing that's erroneous in that is that it required cooperation. But the agreement that he is talking about- Mr. Siegel, if Sessoms doesn't wanna cooperate, certainly we've all seen defendants who don't wanna cooperate. He's a gang member, he's got his friends. It might be dangerous for him to cooperate. He doesn't wanna cooperate. So if there's a cooperation offer, that's a non-starter. That's a very different thing from whether a guilty plea without cooperation to half the mandatory minimum that a reasonable defense lawyer would expect is coming based on the discovery, based on the information about the government's case, if there is no plea at an early stage. And Your Honor, I understand that entirely. I guess the point that I'm making is the confusion in Judge Block's decision isn't a confusion about whether they discussed this offer and whether it was rejected. It's whether this offer that was discussed and rejected required cooperation or was an alternative to cooperation. And I don't think- And I don't think that fact- I mean, what the judge says is that Cooper credibly testified that he conveyed an offer, although the judge thinks it's a completely different offer than anything that's actually on the table ever. You know, that's... He's really, the judge, it seems to me, I read the judge as saying there never was any such other offer than the last offer. And we never get to the question of, and you're asking us to infer that the judge really did know that there was a first offer, even though he said that there wasn't. And he's just confused about all of that. But nevertheless, we can intuit that the judge made a finding that the better offer was conveyed to the defendant and the defendant rejected it. When what he rejected apparently, and what I don't think even Sessoms disputes is, he wasn't interested in cooperation. He was unhappy because his lawyer kept pressing cooperation and not that he was unhappy with a 15-year mandatory minimum sentence. Your Honor, I think the indication of what I'm talking about is, if you look at the section of Cooper's affidavit that Judge Sullivan cited, where Cooper discusses that he had conveyed this plea offer, when the judge says, as Cooper credibly attested, he discussed this offer, he cites that paragraph of Cooper's affidavit. The paragraph of the Lunum affidavit that he cites  And I think if you just play it out, Your Honor, you asked, at best, what we could get from this is a remand to Judge Block and say, Judge Block, make better findings. And I don't think there's any question based on this, based on the decision, the sections that he cited, if you read the transcript. Let's go back to what he said. He said both Cooper and the AUSA credibly attested, but the AUSA did not, right? Attest to what Judge Block says the AUSA attested to. What the AUSA attested to is that he had had a conversation with AUSA Horan, and that AUSA Horan recalled that there had been a early plea discussion, but that there was no additional offer. No, see, this goes back to the question, the disagreement, perhaps, between me and Mr. Schmidt earlier I generously, perhaps, in Mr. Schmidt's view, said the government was all over the lot. He said the government actually conceded there was an offer. And in fact, the government's papers below do say there was an offer, a 15-year offer, right? Your Honor, I think what there was is there was this discussion of the possibility- Is that what the government's papers say below? And I can refer you to the government's post-evidentiary hearing brief that says on page six, it's District Court document number 19, Horan offered a 15-year mandatory minimum. What I'm thinking, and what this is all leading up to, is Cooper's credibility is, to say the least, subject to challenge, right? And we can't say, at least I don't think we can say, that we think he's not credible if the judge says he's credible. On the other hand, I'm not so sure that if Judge Block understood or believed that what the government was telling him was there was an offer, different than the one that Judge Block thinks was the only offer. And the only person who's saying there was such an offer, and I conveyed it, is Cooper. I think it's very different for a judge to say, yeah, this guy says this, but the government also corroborates it. They're both credible. That's a rather different thing, that if the judge understands that the government is telling him something quite different. Your Honor, I don't understand the government to be saying anything different from what- Did I misquote the government's brief below? Your Honor, I think it's just a question about what an offer means, which is one of the issues that comes up in this line of cases. In a term of speaking, when the AUSA says to defense counsel, yes, I think we could get to a place with a 15-year mandatory minimum, that can be referred to as a plea offer. But whether that is a formal offer that includes all the terms that would be in an agreement, there's nothing in the record to suggest that that ever occurred. And in fact, the government was clear at the evidentiary hearing that they looked through the electronic records, and all there was was this partial draft that had never been sent out. So I agree with Mr. Schmidt, and I don't think there's any, I think the government's been clear on this. There was that discussion, the government talked about being open to a 15-year or 17-year mandatory minimum offer. The question is whether that kind of preliminary discussion rises to the level of a formal offer that is required by Frye and Lafler, and that's been required by the other cases. Okay, but in this case, now let me interrupt. I mean, in this case, Cooper says he conveyed that informal offer, whatever you wanna call it, the 15-year floor. He says he conveyed that to his client, and his client rejected it. But Judge Block didn't make a finding about that, right? He didn't assess the credibility of Cooper or Sessoms as to whether that conversation took place. Am I correct about that? Your Honor, I think my reading of Judge Block's, of the sentence that Judge Lynch pointed to, that it's a somewhat garbled finding. But I think what Judge Block is finding is that Cooper was credible, that he did convey that, and what Judge Block's confused about is what the terms of that were. Judge Block, based on the transcript, thought that that offer required cooperation. So when he says that he conveyed that offer, that's what he means by saying that he rejected that because he didn't want to cooperate. There's no question that that is error, but what I would submit is that that is really a harmless error. It's not a question that Judge Block found that that offer was conveyed and that Sessoms rejected it. The question is, is what were the terms of that? But the specific terms of what was rejected aren't really relevant to the analysis. What matters is it was conveyed and it was rejected, and that's what Judge Block found. Well, if it was rejected because he thought it was involved, if Sessoms rejected it because he thought it required cooperation, that's different than if he rejected it because he thought it was too much time, right? That's right. And so if we remanded and asked Judge Block to nail that down, did a conversation take place about the 15-year floor, and did Cooper credibly testify that it was rejected because it was too much time? If that were the case, then this would be over, right? Yes. So, I mean, Your Honor, if the court thinks that that is something that is unclear and if the court thinks that is necessary, that would be a solution. But for all the reasons that I've talked about and for all the reasons that are laid out in our brief, even under, even accepting the arguments, even looking at the record in the best case scenario for Mr. Schmidt and Mr. Sessoms, that offer isn't the kind of offer that triggers the obligation to convey that to the client and isn't the kind of offer that a failure to convey it can be ineffective assistance. So the failure to tell your client that the government could live with a 15-year floor does not trigger an ineffective assistance claim. Your Honor, that's what the Fourth Circuit held in the case that we cited. That's what this court said in Samet. That's what numerous district courts in this circuit have held. When there's a duty to convey an offer, that's a real final offer. And again, just to play it out, and I know I'm out of time, I just wanna finish up this line of questioning. Let's say the court, I don't think there's any chance of this happening, but let's say the court found, I do find that Cooper had not conveyed it. Well, where do you go from there? To determine prejudice, you'd have to think, well, is there a reasonable probability that this proposal could have turned into a real offer? There'd have to be a entirely counterfactual analysis of what would the guidelines have been under this proposal that never existed. The evidence in the record suggests that the government would have viewed the guidelines, even under that proposal, as life. Mr. Cooper might've taken a different view, argued for something closer to 20 years. Would they have been able to reach agreement on that? Whatever- Why would they need to reach agreement? Would the government have been prepared to say, if we've got a 17-year mandatory minimum, we're gonna take our chances and argue to Judge Blocks that the sentence should be life, and the defendant would still be better off than a 35-year mandatory minimum, and the same guideline situation, or the same guideline disputes. Your Honor, maybe that's what had happened, but there's no way of knowing that. In order to actually figure out the prejudice- So if the government makes a firm offer, and the defense lawyer doesn't convey that to his client, it's ineffective assistance, and we act as if that offer had been accepted, or at least give the defendant the opportunity to do that. But if the defense lawyer doesn't ever talk about the negotiations that he's having with the government, so that they never results in a plea agreement, which might seem to be a more profound dereliction on the part of the lawyer, the client is just screwed. Your Honor, that is the holdings of the cases that have been- Lassler, what Fry and Lassler make clear is that you don't have a right to a plea offer, but once the government makes an offer, that that then creates a right to handle it appropriately. The court really, the court analogized it to, for example, ineffective assistance on appeal. There is no right to ineffective assistance to appeals if there is no right to an appeal, but once there's an appeal that's allowed, you have to be effectively counseled on it. Before any obligation set in, there must be that formal offer from the government, because otherwise you're in the world of there is no offer, and there's nothing to counsel about, and there's no right to that offer. And the court was very clear that it didn't wanna get into the nitty gritty of regulating how counsel should negotiate pleas, because you could have a defense counsel, I've practiced with many of them, who their view is, I'm not going to reach out to the government for a plea, I'm not going to ask for a plea, I'm gonna let the government come to me. And there's some AUSAs who that's their view, I'm not gonna reach out to defense counsel, defense counsel has to reach out to me. There could be very good and sound negotiating reasons to do that, but to then constitutionalize that, say the counsel has an obligation to reach out and get a plea agreement, and can't just say, if you have an agreement, send it to me and I'll think about it. That's exactly what the Supreme Court said in Laughlin-Frye, it didn't wanna do. So that's why courts fairly unanimously, as I understand it, have held that where there is this kind of incipient negotiation, that that does not trigger the obligations to share that with their client and advise them on that. It may be good practice, there may be good reasons to do it, but in terms of the constitutional obligation, until the government takes the step of really extending a real offer, there is not an obligation to advise the client on it. So here, for those legal reasons, and based on Judge Block's factual findings, such as they are, I think the record is clear that Mr. Sessoms can't show ineffective assistance and he can't show prejudice. All right, thank you, Mr. Siegel. We'll now hear from Mr. Schmidt for three minutes. Yes, Your Honor, first of all, though the plea agreement doesn't indicate the 84 months on the guidelines for the gun, it does indicate the guidelines for the narcotics, which indeed is the one that would control the guidelines calculation. The robbery without a gun adjustment would be level 20, and the drug-related one is level 36. So notwithstanding the fact that it does not add the language of plus the 86 months, the guidelines that really are an issue, which are the narcotics guidelines, are reflected in the draft plea agreement. Wait, can I just be clear? I thought you had conceded that the details that you just described weren't communicated. No, you're right, oh, absolutely. It wasn't communicated. And what I'm saying is that one of the failures of Mr. Cooper that the system's complaining about- No, no, I'm just being clear. It wasn't communicated, you're saying, was that communicated to Cooper? Is there anything in the record to indicate that the plea agreement that has an April date on it was communicated to Cooper? No, there's no evidence that it was, and in fact, it goes back to then the fact is that the fact that Cooper didn't do anything that he should have done, including, okay, 15-year mandatory minimum, what is the approximate guidelines, right? So I can go back and talk to my client. So then the client gets screwed because Cooper didn't do the next step that any lawyer should have done. But if he went and got the calculations and didn't go back to him, then the client's in better shape. And I don't think that makes any sense. What I'm saying is that the reason why they're looking for some type of a plea offer in Lafler and the other cases is they don't want phony things to come up. And we know phony things are not coming up in this case because we have what is in the record, what would have been offered had Mr. Cooper did his job. And what I am saying is that since there is no issue as to a fraudulent or a defendant claiming an offer that he should have taken and never existed, we know that that offer did exist, right? And so that issue really should not come into it. What we know is that Cooper has no notes. He's taken no notes of anything, conversations with his client, conversations with the government. He has done nothing to assist his client. And we must look at the fact that that conduct is so below the standard that a lawyer should follow, right? That is it reasonable then to take a look at the draft plea agreement, see that the elements are in there. And as Your Honor knows, the only difference between any agreement is the guideline number for, in this case, the drugs and the criminal history. And all of the other elements in a plea agreement from the Southern District are basically the same. So it does not take a lawyer, but a lawyer who has been doing CJA work for all these years and knows about all these plea agreements, it's a simple thing. And he didn't do this simple thing. And as a result of that, Mr. Sessoms was in a position of having really no representation until the trial. And that is what is wrong. And I think that this court can find that if you say what a, if a competent lawyer handled this case and did what he was supposed to do, it is reasonably probable that Mr. Sessoms would not have ended up on trial where a mandatory 40 years, though he got 35 because the change in the law that he was facing, and he would have pled guilty to a charge with a 15 or 17 year mandatory minimum with the guidelines level would have been like 23, 24 years, something like that in front of Judge Trager, where Judge Trager was known to be a fair and lenient sentencer. And Mr., and as a result, it's reasonably probable that his sentencing sentence would have been in that range or lower. And I think that the facts of the case do demonstrate that. Okay, thank you. I think we got our money's worth. So we will reserve decision, but thank you both for the argument.